IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC., <br><br> **Plaintiff,** <br><br> v. <br><br> PEDRO MIGUEL VARGAS VARGAS, *et al.*, <br><br> **Defendants.** | CIVIL NO. 16-2823 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

This matter is before the Court on Co-Defendant Israel Soto de Bovee's ("Mr. Soto") Motion to Dismiss. Docket No. 16. Plaintiff DLJ Mortgage Capital, Inc. ("Plaintiff" or "DLJ") opposed the Motion to Dismiss.[1] Docket No. 22. In lieu of a reply to DLJ's opposition, Mr. Soto replied in an Informative Motion and Request for Conference ("Informative Motion"). Docket No. 23. DLJ responded with a Motion to Strike the Informative Motion ("Motion to Strike"). Docket No. 24. For the reasons stated below, Mr. Soto's Motion to Dismiss is **DENIED** *without prejudice*.

BACKGROUND

A. **Factual History**

DLJ is a corporation organized and existing under the laws of New York with its principal place of business located in that State. Docket No. 1 at 1. DLJ is the current owner and holder of a

---

[1] DLJ brought this action against Mr. Soto and Pedro Miguel Vargas Vargas ("Mr. Vargas") (collectively as "Defendants"). Docket No. 1.

mortgage subscribed by Defendants on December 31, 2005. *Id.* at 4. At that time, they subscribed a mortgage note payable to First Bank Puerto Rico, for the principal sum of $144,000 with interest on the unpaid principal balance at the rate of six and three fourths. *Id.* at 2. The mortgage was modified on September 13, 2010 to increase the principal amount to $147,342.62 modifying the interest too. *Id.* at 3. Finally, on November 14, 2014, the Defendants entered in a Home Affordable Modification Agreement ("HAMA") increasing the principal balance to $191,341.82 with the maturity date on October 1, 2054. *Id.* at 3-4.

### B. Procedural History

On October 13, 2016, DLJ as owner and holder of the mortgage note sued Defendants for collection of money and foreclosure of mortgage. Docket 1. Mr. Soto responded arguing that Select Portfolio Servicing, Inc. ("SPS") is the lender named on the HAMA, and the real party in interest. Docket No. 16 at 1-2. Mr. Soto claims that Plaintiff showed no connection between DLJ and SPS, except for an allonge presented by Plaintiff, allegedly incomplete, lacking loan account number, proof of notary number, and lacking Mr. Soto's name. *Id.* at 2-3. Mr. Soto also argued that the party bringing the lawsuit bears the burden of establishing that it validly holds the mortgage note. *Id.* at 3-4. Thus, Mr. Soto contends that non-production of more evidence to proof that DLJ validly held the mortgage casts doubt in the veracity of the documents and standing of DLJ. *Id.*

DLJ filed an opposition to the Motion to Dismiss alleging that the Complaint contains enough well pleaded facts that shows that DLJ is the owner and holder of the note, that Defendants are the owners of the mortgage property, and that they defaulted on the loan payment obligation. Docket No. 22 at 1. Additionally, it contended that SPS is an agent that serves as an attorney-in-fact and mortgage servicer for DLJ through a Limited Power of Attorney, executed by

both entities, and the fact that SPS executed the HAMA acting as an agent for DLJ does not change DLJ identity as a real party in this dispute. *Id.* at 6-7. Therefore, DLJ claims that SPS is not required to join the Complaint in order to grant relief. *Id.* at 8.

Mr. Soto replied with an informative motion stating that there was an issue with the Limited Power of Attorney because the office of the Utah's Davis County Recorder's Office did not have record of ever notarizing the power of attorney that DLJ claimed to have. Id at 2. Mr. Soto requested a conference to physically inspect review and discuss the veracity of the documents presented by DLJ in this action and to negotiate a speedy resolution. *Id.* at 3. Finally, DLJ submitted a Motion to Strike, contending that Mr. Soto's Informative Motion was intended as a reply to DLJ opposition and, therefore, was improper. Docket No. 24.

## STANDARD OF REVIEW

A defendant may present a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In order to survive this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). *Twombly* indicates that the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965. At this stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). It is important to note that, through this process, courts cannot make credibility

determinations or weigh the evidence, as these are jury functions and not those of a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The First Circuit has cautioned against confounding the plausibility standard with the likely success on the merits, explaining that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556). Even taking plaintiff's well pleaded allegations as true, however, Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Likewise, unadorned factual statements as to the elements of the cause of action are insufficient as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir. 2011). Finally, "[s]pecific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

## ANALYSIS

Mr. Soto argues that DLJ is not a proper party to this suit because it is not the named lender on the HAMA, or shown any connection between DLJ and SPS. Docket No. 16 at 1-3. Additionally, Mr. Soto contends that the allonge is invalid against him, as it does not include his name. *Id.* Therefore, Mr. Soto argues that DLJ has no standing to prosecute this action against him. *Id.* at 3. This Court disagrees.

I. Standing

The requirement for courts to analyze standing is rooted in the case or controversy requirement of the Constitution. *See* U.S. Const. art. III, § 2. A case or controversy exists when a

party demonstrates "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Thus, a party must satisfy three requirements to have Article III standing on a claim: (1) an actual or threatened injury; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that it must be likely that the injury can redressed by a favorable decision on the merits. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

The plaintiff, who invokes federal jurisdiction, bears the burden of establishing these elements. *Lujan*, 504 U.S. 555 at 561. They are not mere pleading requirements but rather an indispensable part of the plaintiff's case. Therefore, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at the successive stages of the litigation. *See Lujan* v. *National Wildlife Federation*, 497 U.S. 871, 883-889 (1990).

### A. Allonge

With this presumption in mind, the Court finds that the Complaint sufficiently alleges that DLJ is the owner of the mortgage note. DLJ pleads on Paragraph 11 of the Complaint that "[t]he plaintiff is currently the owner and holder in due course of said mortgage note." Docket No. 11 at 3. The mortgage note indicates that the "Borrower (Mr. Soto) promise to pay First Bank Puerto Rico, or order the principal sum of [$144,000] dollars." DLJ presents an allonge as evidence to support that it is the rightful holder of the mortgage note. Docket No. 1-3 at 3. The allonge includes a space for the loan number, which is empty, mentions Pedro Vargas-Vargas as the borrower, and also includes the amount that was loaned to the borrower: $144,000. *Id.* Even

though there is a lack of specificity in the allonge, a plain reading of the Complaint, along with the mortgage note, and its allonge supports that DLJ is the real party in interest.[2] Although the mortgage note was originally payable to First Bank, from its creation, it is also payable to the holder of the mortgage note, in this case DLJ.

This Court considers that the allonge is sufficient to transfer the property rights, and with that the possibility to start a foreclosure action against mortgagees that are in default. Under Puerto Rico law, when a mortgage is used to guarantee a negotiable instrument, or transferable titles by endorsement or to the bearer, the mortgage rights will transfer with the instrument, without the necessity to contact the borrower or to inform of the transfer of the registry. P.R. Laws Ann. tit. 30, § 6118.[3] Additionally, under Puerto Rico law of negotiable instruments, "if an instrument is payable to an identified person, negotiation requires transfer of the possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of the possession alone." P.R. Laws Ann. tit. 19, § 551. Here, the mortgage instrument or "pagare" was made to the order of FirstBank Puerto Rico. Docket No. 1-3 at 1. The mortgage note states that the payments shall be made to the note holder and that the note holder has the right to collect the monthly payments with interest specified in the note. *Id.* The mortgage note was transferred from First Bank to the DLJ on June 20, 2013. Docket No. 1-3 at 3. Said transfer is allowed under Puerto Rico law without notice to the borrower. Therefore, DLJ has sufficiently pled that it is the owner or holder of the note on which it seeks to foreclose.

---

[2] The Court notes that Mr. Soto did not put forth any case law to show that endorsement of an allonge requires a date for it to be valid.

[3] This statute was amended in 2015 by the Puerto Rico Legislature. The Court will produce a certified translation and attach it as an exhibit to the opinion.

Accordingly, Mr. Soto's Motion to Dismiss is **DENIED**.

B. Limited Power of Attorney

Under Puerto Rico's General Corporation Act of 2009 (the Act) in order for a "foreign corporation" to do business it has to comply with certain requirements the Act provides such as paying applicable fees, and filing certain documents with the office of the Secretary of State. *See* P.R. Laws Ann. tit. 14 §3801. The Act further provides that "foreign corporations" doing business in the Commonwealth without abiding by the proper procedures may not bring suit in the Commonwealth's courts P.R. Laws Ann. tit. 14 § 3803. At the same time, the Act provides an exhaustive list of activities that do not constitute doing business in Puerto Rico. P.R. Laws Ann. tit. 14 § 3805. These activities include: "(1) initiate, defend or settle any judicial process; (7) create or acquire debts mortgages or real property securities; (8) guarantee or collect debts or foreclose on mortgagees or securities on the properties which guaranty such debts and (9) own title to real or personal property" *Id.* at 3805(a).

Here, DLJ's foreclosure action falls squarely within the activities that are not considered to be "business transactions" within Section 3801 of the Act. DLJ is seeking to foreclose on a mortgage note and collecting a debt, which is one of the exceptions specified under the Act. Docket No. 1. Therefore, the Court finds that DLJ is not doing business within the meaning of Section 3801 of the Act.

Nevertheless, DLJ presents evidence that supports the relationship between it and SPS. DLJ submits a Limited Power of Attorney that stipulates that "DLJ Mortgage Capital Inc. [is] a

corporation organized and existing under the laws of the State of Delaware[4] constitutes and appoints Select Portfolio Servicing, Inc. organized and existing under the laws of the State of Utah, its true and lawful Attorney in Fact." Docket No. 22-1 That document include a list of possible transactions allowed through it, which include:

> The modifications or re-recording of a Mortgage at the written request of DLJ Mortgage Capital, Inc. or its designee ("the Owner") of the Mortgage or the title company that insured the Mortgage, where said modifications or re-recording is solely for the purpose of correcting the Mortgage to conform to the original intent of the parties thereto or to correct title error discovered after such title insurance was issued and said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage as insured

> With respect to a Mortgage, the foreclosure, the taking of a deed in lien of foreclosure, or the commencement and completion of judicial or nonjudicial foreclosure proceedings, cancellation or rescission of same, including, without limitation, any of the following acts: b. Statements of breach or non-performance; c. Notices of default; d. Cancellations/rescissions of notices of default and/or notices of sale; e. The taking of a deed in lien of foreclosure; and f. Such other documents and actions as may be necessary under the terms of the mortgage, deed of trust or state law to expeditiously complete said transactions;

> The full satisfaction/release of a Mortgage (or assignment of mortgage without recourse) or requests to the Owner for a full reconveyance upon payment and discharge of all sums secured thereby; this section shall not extend to the execution or partial satisfaction/releases, partial reconveyance or the execution of requests to the Owner to accomplish same.

---

[4] In the Complaint, DLJ states that it is a corporation "organized and existing under the laws of New York with its principal place of business located at New York, NY." Docket No. 1 at 1. In the explanation ORDERED below Plaintiff shall clarify why the same corporate entity is stating it has two principal place of business.

*Id.* This document appears to establish SPS as a mortgage servicer. *Id.* The Real Estate Settlement Procedure Act defines a mortgage servicer as "the person responsible for servicing the loan." 12 U.S.C. § 2605(i)(2), and "servicing" as

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3).

The mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan, usually meaning that these two parties are perfectly identical with respect to successive suits arising out of a single mortgage transaction. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006). Here, DLJ has put enough information to show that SPS is its mortgage servicer. Thus, DLJ has standing to bring forth the claims against Defendants in the Complaint.

Mr. Soto, however, presented some arguments regarding the instrument. It was apparently sworn on March 2010 before Notary Arthur A. Loskove in New York County, New York State. Docket No. 22-1. Mr. Soto considers that there is a discrepancy between the dates of issue because in the first page of the Limited Power of Attorney May 23, 2006 was written by hand. *Id.* In addition, he points out that when asking about its appearance in Davis County records, a recorder had never heard of that document before.

The Puerto Rico Notary Rules, Rule 41 establishes that "Notarized documents issued outside of Puerto Rico must be notarized so that they can be effective as public instruments in this jurisdiction." They have to be legitimized by a competent authority in order to be notarized, and as established under 41(a)(1), if the document is from a State, the legalization must be done

by an authorized official and also is required evidence of the official authority who granted it, or a certification that demonstrates the official authorization to grant the document.

Here, those requirements have not been meet. From the documents presented by DLJ, this Court cannot not find any indication of a legalization process as there is no support by an authorized official regarding the Limited Power of Attorney. Also the instrument lacks a notary seal. Therefore, this Court **ORDERS** DLJ to present evidence as to why it is not in compliance with Rule 41. Additionally, DLJ shall explain why the instrument has May 23, 2006 written by hand and why Davis County does not have a record of notarizing the instrument. Finally, DLJ will address the discrepancies in the place of business between the Complaint and the Limited Power of Attorney.

## II. Requirement for Mediation

The Law for Compulsory Mediation and Preservation of your Home in the Foreclosure Proceedings of a Main Home establishes that in cases where a mortgage creditor may initiate a foreclosure process over a residential property that constitutes the principal dwelling, a compulsory mediation meeting shall be held. The mortgagee will notify the mortgagor of all available alternatives in order to avoid the foreclosure of the mortgage or the judicial sale in order to reach an agreement or modification that allows the mortgagor to establish a payment agreement or other satisfactory alternative to the parties and not lose their main home. Law No. 184 of August 17, 2012.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss in **DENIED** *without prejudice*. DLJ is ORDERED to explain why the notarized documents are not in compliance with Puerto

Rico Notary Rules Rule 41. Additionally, DLJ shall explain why the instrument has May 23, 2006 written by hand and why Davis County does not have a record of notarizing the instrument and why there are discrepancies in the alleged place of business between the Complaint and the Limited Power of Attorney.

Informative Motion due by September 13, 2018.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Thursday, August 30, 2018.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge